## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYESHA CLARK, Individually, and<br>as Parent and Natural Guardian of<br>ZION CLARK, a minor<br>1110 W. Lehigh Avenue<br>3rd Floor<br>Philadelphia, Pennsylvania 19133 | : **FILED PURSUANT TO**<br>: **28 U.S.C. §§ 1331, 1391 AND**<br>: **LOCAL CIVIL RULE 5.1.2**<br>:<br>: CIVIL ACTION NO.<br>: |
| and | : COMPLAINT<br>: |
| LILLIE MAE STUBBS<br>2734 Preston Drive<br>Decatur, Georgia 30034 | : JURY TRIAL DEMANDED<br>:<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| OFFICER DWAYNE MERRELL<br>Badge #7078 c/o CITY OF PHILADELPHIA<br>POLICE DEPARTMENT, Individually and in<br>his Official Capacity<br>16th Police District<br>3900 Lancaster Avenue<br>Philadelphia, Pennsylvania 19104 | :<br>:<br>:<br>:<br>:<br>:<br>: |
| and | : |
| CITY OF PHILADELPHIA<br>c/o City Solicitor's Office<br>1600 Arch Street<br>Philadelphia, Pennsylvania 19103 | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

## COMPLAINT

Plaintiffs, Lyesha Clark, Individually, and as Parent and Natural Guardian of Zion Clark,

a minor, and Lillie Mae Stubbs, by and through their attorneys, Kline & Specter, P.C., allege as

follows:

## PARTIES

1.      Plaintiff, Lyesha Clark, Individually, and as Parent and Natural Guardian of Zion Clark, a Minor ("Clark"), is an adult citizen and resident of the state of Pennsylvania, residing at 1110 W. Lehigh Avenue, 3rd Floor, Philadelphia, Pennsylvania.

2.      Minor-plaintiff, Zion Clark ("Minor-Plaintiff Clark"), is a minor and resident of the state of Pennsylvania, residing at 1110 W. Lehigh Avenue, 3rd Floor, Philadelphia, Pennsylvania.

3.      Plaintiff, Lillie Mae Stubbs ("Plaintiff Stubbs") is an adult citizen and resident of the state of Georgia, residing at 2734 Preston Drive, Decatur, Georgia 30034.

4.      Defendant, Dwayne Merrell ("Defendant Merrell"), is an adult individual and police officer with the City of Philadelphia Police Department in the state of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at the 16th Police District, 3900 Lancaster Avenue, Philadelphia, Pennsylvania. At all times relevant hereto, Officer Dwayne Merrell was a Philadelphia police officer assigned to the 16th Police District. Plaintiffs are asserting claims against Officer Dwayne Merrell in his individual capacity.

5.      Defendant, City of Philadelphia ("City"), is a city, political subdivision, governmental entity and municipality in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at City Hall, c/o City Solicitor's Office, 1600 Arch Street, Philadelphia, Pennsylvania 19103.

6.      At all times material hereto, Defendant, City of Philadelphia, has owned, operated, maintained, was responsible for, and/or otherwise controlled the 16th Police District.

7.      At all times material hereto, Defendant, City of Philadelphia, provided police services to the City and County of Philadelphia.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under The Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claim occurred in this District.

## MATERIAL FACTS

11.     On April 15, 2017, Defendant Merrell was on duty as a Philadelphia Police Officer.

12.     Defendant Merrell was assigned to a dirt bike initiative, a special detail to apprehend dirt bike and ATV riders and/or confiscate dirt bikes and ATVs operated on the streets of Philadelphia. As part of his assigned detail, Defendant Merrell was operating a police dirt bike.

13.     On April 15, 2017, Caliph Rashaad Douglass ("Douglass") was operating a dirt bike on the streets of Philadelphia.

14.     Defendant Merrell observed Douglass near Cobbs Creek Parkway and Spruce Streets at which time Defendant Merrell activated his lights and sirens and gave chase on his police dirt bike.

15.     Defendant Merrell's pursuit resulted in a high-speed chase that crossed city lines into Upper Darby, Pennsylvania.

16.     Defendant Merrell failed to notify Upper Darby police of his pursuit and Upper Darby police were unaware that Defendant Merrell had pursued Douglass into their jurisdiction.

17.     At or around 1:27pm, Plaintiff Stubbs and her niece, minor-Plaintiff Clark, were crossing 69th Street near the 69th Street Transportation Center in Upper Darby, Pennsylvania in the clearly designated pedestrian crosswalk. At that time, Douglass was traveling northbound on 69th Street while being pursued by Defendant Merrell.

18.     Douglass struck Plaintiff Stubbs and minor-Plaintiff Clark, throwing them approximately 42 feet from the point of contact. Both Plaintiff Stubbs and minor-Plaintiff Clark lost consciousness and sustained serious injuries.

19.     According to time-stamped video obtained by Upper Darby police, Defendant Merrell arrived at the intersection approximately 25 seconds after impact. Defendant Merrell drove his dirt bike past where Plaintiff Stubbs and minor-Plaintiff Clark landed after impact and continued his pursuit of Douglass.

20.     Upon information and belief, Defendant Merrell did not notify emergency services or the Upper Darby police that Plaintiff Stubbs and minor-Plaintiff Clark had been struck and needed urgent medical care.

21.     Following impact, Douglass lost control of the dirt bike and fled on foot before seizing a nearby vehicle. Douglass was later apprehended in a nearby wooded area by Upper Darby police.

22.     Plaintiff Stubbs was taken to Penn Presbyterian Hospital with head and extremity injuries. Minor-plaintiff Clark was taken to Children's Hospital of Philadelphia with head, neck and extremity issues where she was admitted to the intensive care unit and underwent emergent surgery. Plaintiff Stubbs and minor-Plaintiff Clark underwent extensive treatment for their respective injuries and each continues to suffer from these injuries and their sequalae.

23.    Philadelphia Police directive 9.4 concerning vehicular pursuits prohibits high speed motor vehicle chases except in limited circumstances.  The directive states as follows:

> An officer is justified in initiating a vehicular pursuit only when they are:
>
>> a. In close proximity to a suspect vehicle and believes a pursuit is necessary to prevent the death or serious bodily injury of another person, or
>>
>> b. In close proximity to a suspect vehicle and believes BOTH:
>>
>>> 1) The pursuit is necessary to effect the arrest or prevent escape, AND;
>>> 2) The officer has probable cause to believe that the person being pursued has committed or attempted a forcible felony OR, has probable cause to believe that the person being pursued possesses a deadly weapon, other than the vehicle itself.
>>
>> In all other circumstances initiating a vehicular pursuit is strictly prohibited.  Accordingly, initiating a pursuit solely for stolen vehicles and traffic violations, including Driving Under the Influence (DUI), is strictly prohibited.

See Directive 9.4, attached hereto as Exhibit "A."

24.    Defendant Merrell did not reasonably believe that pursuit of Douglass was necessary to prevent the death or serious bodily injury of another person.

25.    Defendant Merrell did not reasonably believe and did not possess information to support any such belief that Douglass had committed or attempted a forcible felony; that Douglass possessed a deadly weapon, other than the vehicle itself; or that pursuit of Douglass was necessary to effect his arrest or prevent escape.

26.    Directive 9.4 also provides that "sworn personnel in fresh and continuous pursuit may NOT pursue outside of the boundaries of Philadelphia unless permission is granted by a higher-ranking supervisor."  See Exhibit "A."

27. Defendant Merrell did not have permission from a higher-ranking supervisor to pursue Douglass outside of Philadelphia into Upper Darby.

28. Defendant Merrell violated the Philadelphia Police directive for vehicular pursuits when pursuit was specifically prohibited and despite a large number of pedestrians in the area and the significant risk of causing death or serious bodily injury to pedestrians like Plaintiff Stubbs and minor-Plaintiff Clark.

29. Douglass' operation of a dirt bike was not an emergency and Defendant Merrell had time to consider whether to engage in an inherently risky pursuit.

30. Nonetheless, Defendant Merrell consciously disregarded a great risk of harm to the public and especially pedestrians like Plaintiff Stubbs and minor-Plaintiff Clark by engaging in a high-speed police pursuit in a non-emergent situation and in violation of departmental policy.

31. It was foreseeable that by pursuing Douglass with his lights and sirens activated, Defendant Merrell's conduct would cause Douglass to flee. By pursuing Douglass without justification in a densely populated area, Defendant Merrell precipitated a high-speed chase that caused Plaintiff Stubbs and minor-Plaintiff Clark to be struck by Douglass' vehicle.

32. But for the unauthorized, unwarranted and reckless pursuit initiated by Defendant Merrell, Douglass would not have engaged in a high-speed chase resulting in impact with and injury to Plaintiff Stubbs and minor-Plaintiff Clark.

33. The acts and omissions of Defendants directly and proximately caused the injuries and damages suffered by Plaintiff Stubbs and minor-Plaintiff Clark.

34. The dangerous and reckless conduct of Defendants were substantial factors in causing the injuries sustained by Plaintiff Stubbs and minor-Plaintiff Clark.

35.     As a direct and proximate result of the reckless actions and conducts of Defendants, Plaintiff Stubbs was caused to suffer and continues to suffer from the following:

a.  Concussion with loss of consciousness of unspecified duration

b.  Traumatic brain injury

c.  Multiple rib fractures

d.  Fracture of alveolus of maxilla

e.  Fracture of nasal bones

f.  Non-displaced fracture of first metatarsal bone, right foot

g.  Displaced fracture of second metatarsal bone, right foot

h.  Displaced fracture of third metatarsal bone, right foot

i.  Dislocation of tooth

j.  Scalp hematoma

k.  Abrasions and contusions

l.  Nausea

m.  Dizziness

n.  Photophobia

o.  Sensitivity to loud noise

p.  Fatigue

q.  Headaches

r.  Confusion

s.  Acute and chronic pain due to trauma

t.  Post traumatic amnesia

u.  Loss of life's pleasures

v.   Pain and suffering

w.   Mental anguish

x.   Anxiety

y.   Past and future medical expenses; and

z.   Past and future lost earnings and lost earning capacity.

36.   As a direct and proximate result of the reckless actions and conduct of Defendants, minor-Plaintiff Clark was caused to suffer and continues to suffer from the following:

a.   Severe traumatic brain injury with loss of consciousness

b.   Cerebrovascular disease

c.   Gait and mobility abnormalities

d.   Right holohemispheric subdural hematoma with left midline shift

e.   Left holohemispheric subdural hematoma

f.   Cervical (C1-C2 to C5-C6) interspinous ligament injury

g.   Cognitive deficits

h.   Liver laceration

i.   Pulmonary contusion

j.   Hypertension

k.   Bradycardia

l.   Right craniotomy with bone flap removal

m.   Cranioplasty

n.   Decompressive craniectomy

o.   Intubation

p.   Extubation

q.  Placement of NG tube

r.  Urinary retention

s.  Subcapsular hepatic laceration

t.  Right superior ischial ramus fracture

u.  Left superior pubic and left ischial rami fractures

v.  Displaced transverse bilateral inferior ischial rami fractures

w.  Nondisplaced left ischial body fracture

x.  Anterior sacral body fracture

y.  Left ischiopubic synchondrosis disruption

z.  Complex bilateral pelvic fractures

aa. Fracture of right pubis

bb. Fracture of sacrum

cc. Headaches

dd. Dizziness

ee. Neurologic decompensation

ff.  Bone flap instability

gg. Hemicranial revision surgery

hh. Subdural fluid collection

ii.  Right temporal/frontal swelling

jj.  Left frontal ventricular EVD placement

kk.  Titanium plates

ll.  Acute and chronic pain due to trauma

mm. Loss of life's pleasures

nn. Mental anguish

oo. Anxiety

pp. Confusion

qq. Disfigurement

rr. Disability

ss. Humiliation

tt. Past and future medical expenses; and

uu. Past and future lost earnings and lost earning capacity.

37.     Defendant Merrell and the City of Philadelphia, acting under the color of state law, affirmatively caused Plaintiff Stubbs and minor-Plaintiff Clark, to be subjected to the deprivation of rights, privileges and immunities guaranteed by the Constitution and the law.

38.     Accordingly, Plaintiff, Lyesha Clark, Individually, and as Parent and Natural Guardian of Zion Clark, a minor and Lillie Mae Stubbs, brings this civil action against Defendant Dwayne Merrell and the City of Philadelphia, pursuant to 42 U.S.C. § 1983, and the doctrinal tenets interpreting this statute, and seek all damages cognizable by law.

## <u>COUNT I - CIVIL RIGHTS</u>
**Plaintiff, Lyesha Clark, Individually, and as Parent and Natural Guardian of Zion Clark, a minor and Lillie Mae Stubbs v. Defendant Dwayne Merrell and Defendant City of Philadelphia**

39.     The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

40.     At all times material hereto, Dwayne Merrell and the City of Philadelphia acted under color of state law.

41.     Defendants' conduct, as set forth above and herein, evinces a state-created danger.

42. By engaging in an unjustified high-speed police pursuit in a densely populated area without reasonable belief that Douglass committed a requisite offense and/or posed an immediate threat to public safety, Defendant Merrell and the City of Philadelphia, as set forth above, were deliberately indifferent and demonstrated a reckless disregard to the safety, bodily integrity, well-being, liberty and substantive due process rights of Plaintiff Stubbs and minor-Plaintiff Clark.

43. Defendants' conduct, as set forth above, demonstrates that Defendants acted with conscious disregard of the great risk of serious harm to Plaintiff Stubbs and minor-Plaintiff Clark.

44. The above-referenced actions rise to a level of intent to cause harm.

45. Defendants' conduct, as set forth above, was so egregious as to shock the conscience.

46. Defendants' conduct, as set forth above, demonstrates Defendants' conduct affirmatively created an opportunity that otherwise would not have existed for harm to Plaintiff Stubbs and minor-Plaintiff Clark to occur.

47. Defendants' conduct, as set forth above, demonstrates that Defendants unreasonably and unjustifiably placed Plaintiff Stubbs and minor-Plaintiff Clark in a foreseeably dangerous position.

48. Defendants' conduct, as set forth above, demonstrates that the harm caused to Plaintiff Stubbs and minor-Plaintiff Clark was a foreseeable and fairly direct result of Defendants' conduct.

49. Defendants' conduct, as set forth herein, violated Plaintiff Stubbs and minor-Plaintiff Clark's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

50. Defendant Merrell and the City of Philadelphia were aware that Plaintiff Stubbs and minor-Plaintiff Clark had a clearly established constitutional right to bodily integrity and right to be free of state created danger at the time of the incident.

51. As a direct and proximate result of Defendants' unreasonable, unjustifiable and unconstitutional conduct, Plaintiff Stubbs and minor-Plaintiff Clark were caused to suffer the injuries described in Paragraphs 35 and 36 of Plaintiff's Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Dwayne Merrell and the City of Philadelphia, and compensatory damages, jointly and severally, together with attorney fees and costs, and pre- and post-judgment interest. Plaintiffs hereby certify pursuant to Local Civil Rule 53.2(3) that the value of Plaintiffs' claim is in excess of $150,000 exclusive of interest and costs, and that Plaintiffs' claim alleges a violation of rights secured by the U.S. Constitution.

### COUNT II - CIVIL RIGHTS
**Plaintiffs, Lyesha Clark, Individually, and as Parent and Natural Guardian of Zion Clark, a minor and Lillie Mae Stubbs v. Defendant City of Philadelphia**

52. The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

53. The conduct as set forth above and herein evinces a state-created danger in violation of Plaintiff Stubbs' and minor-Plaintiff Clark's constitutional rights.

54. The conduct as set forth above demonstrates that Defendant, City of Philadelphia, failed to adequately train police officers and/or failed to have an adequate training policy regarding the appropriate and justifiable use of police pursuits; the appropriate and justifiable use of high speed chases; and the risk posed by police pursuits and high speed chases to pedestrians and innocent bystanders, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

55.     The conduct as set forth above demonstrates that Defendant, City of Philadelphia, failed to adequately supervise and/or monitor police pursuits; high speed chases; and compliance with the police department's written policies regarding police pursuits and high speed chases and/or failed to have an adequate training policy on the supervision and/or monitoring of police pursuits; high speed chases; and compliance with the police department's written policies regarding police pursuits and high speed chases, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

56.     The conduct set forth above demonstrates that Defendant, City of Philadelphia, failed to enforce the police department's written policies regarding the use of police pursuits and high speed chases and/or had an unwritten policy or custom regarding the use of police pursuits and high speed chases that differed and/or was contrary to the police department's written policies regarding police pursuits and high speed chases and/or had an unwritten policy or custom that authorized and/or sanctioned officers not to follow the police department's written policies regarding police pursuits and high speed chases, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

57.     The conduct set forth above indicates that Defendant, City of Philadelphia, had inappropriate policies, procedures, customs and practices with respect to the use of police pursuits; the use of high-speed chases; and the risk posed by police pursuits and high-speed chases to pedestrians and innocent bystanders, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

58.     The conduct as set forth above demonstrates that Defendant, City of Philadelphia, failed to adequately train, and/or failed to have an adequate training policy regarding the pursuit of persons into neighboring jurisdictions, including without permission from a higher-ranking

supervisor or the authorization and/or notification of the neighboring jurisdiction, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

59.    The conduct set forth above indicates that Defendant, City of Philadelphia, failed to enforce policies regarding the pursuit of persons into neighboring jurisdictions, including without permission from a higher-ranking supervisor or the authorization and/or notification of the neighboring jurisdiction, and/or had an unwritten policy or custom that authorized and/or sanctioned pursuit without permission from a higher-ranking supervisor or the authorization and/or notification of the neighboring jurisdiction, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

60.    The conduct set forth above indicates that Defendant, City of Philadelphia had inappropriate policies, procedures, customs and practices with respect to the pursuit of persons into neighboring jurisdictions, including without permission from a higher-ranking supervisor or the authorization and/or notification of the neighboring jurisdiction, thereby depriving Plaintiff Stubbs and minor-Plaintiff Clark of their constitutional rights.

61.    The above-referenced actions demonstrate a conscious disregard of great risk of harm to persons like Plaintiff Stubbs and minor-Plaintiff Clark.

62.    The above-referenced actions are outrageous, egregious, and conscience-shocking, and rise to a level of intention to cause harm.

63.    As a direct and proximate result of Defendants' unreasonable, unjustifiable and unconstitutional conduct, Plaintiff Stubbs and minor-Plaintiff Clark were caused to suffer the injuries described in Paragraphs 35 and 36 of Plaintiff's Amended Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Dwayne Merrell and the City of Philadelphia, and compensatory damages, jointly and severally, together with attorney fees

and costs, and pre- and post-judgment interest. Plaintiff hereby certifies pursuant to Local Civil Rule 53.2(3) that the value of Plaintiffs claim is in excess of $150,000 exclusive of interest and costs, and that Plaintiffs claim alleges a violation of rights secured by the U.S. Constitution.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered against all Defendants for damages to be determined at trial, and for all other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____

THOMAS R. KLINE, ESQUIRE
TRACIE L. PALMER, ESQUIRE
PRISCILLA E. JIMENEZ, ESQUIRE
Attorney ID Nos.: 28895/312098/312403
1525 Locust Street
Philadelphia, PA 19102
215-772-1384 (p)
215-735-0937 (f)
*Attorneys for Plaintiffs*

Dated: April 11, 2019

# EXHIBIT A

 **PHILADELPHIA POLICE DEPARTMENT     DIRECTIVE 9.4**

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 06-16-16 |

**SUBJECT:   VEHICULAR PURSUITS**
**PLEAC 4.2.1, 4.2.2**

---

1. **POLICY AND PURSUIT JUSTIFICATION**

   A. Policy

      1. The primary consideration when participating in or supervising any pursuit is the safety and welfare of the public, other officers, as well as the suspect(s). Every officer and supervisor must always weigh the benefits of immediate capture with the risks inherent to the pursuit itself.

   B. Justification for Initiating a Vehicular Pursuit

      1. An officer is justified in initiating a vehicular pursuit only when they are:

         a. In close proximity to a suspect vehicle and believes a pursuit is necessary to prevent the death or serious bodily injury of another person, or

         b. In close proximity to a suspect vehicle and believes BOTH:

            1) The pursuit is necessary to effect the arrest or prevent escape, <u>AND</u>

   \*1       2) The officer has <u>probable cause</u> to believe that the person being pursued has committed or attempted a forcible felony OR, has <u>probable cause</u> to believe that the person being pursued possesses a deadly weapon, other than the vehicle itself.

   \*2    2. In all other circumstances initiating a vehicular pursuit is strictly prohibited. Accordingly, initiating a pursuit solely for stolen vehicles and traffic violations, including Driving Under the Influence (DUI), is strictly prohibited.

---

2. **DEFINITIONS**

   A. <u>Vehicular Pursuit</u> -  The use of a motor vehicle to chase, follow, or go after a vehicle that has refused to stop.

B. <u>Forcible Felony</u> - A felony involving actual or threatened serious bodily injury, which include:

Definitions Continued:

1. Murder,
2. Voluntary Manslaughter,
3. Arson Endangering Persons, and
4. Aggravated Assault Causing Serious Bodily Injury

The following felonies shall also be classified as "Forcible" when their commission includes actual or threatened force. These include:

1. Rape,
2. Involuntary Deviate Sexual Intercourse,
3. Robbery, and
4. Kidnapping.

C. <u>Deadly Weapon</u> - Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury [18 Pa. C.S. 2301].

\*5 **NOTE:** For the purposes of this directive, the suspect vehicle is excluded as a deadly weapon regardless of crime committed.

D. <u>Serious Bodily Injury</u> - Bodily injury, which creates a substantial risk of death, or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ [18 Pa. C.S. §2301].

E. <u>Marked Radio Patrol Sedan</u> – Standard four door marked police vehicle equipped with sirens and overhead lights, such as but not limited to District Patrol Vehicles (RPC), Highway Patrol Vehicle, Narcotics Vehicle, etc.

## 3. GENERAL PURSUIT PROCEDURES AND GUIDELINES

A. Acknowledgment of a pursuit must be made by the District Patrol Supervisor or Police Radio.

B. If no District Patrol Supervisor acknowledges, Police Radio will assign a Supervisor to monitor and control the pursuit. If the assigned Supervisor fails to acknowledge Police Radio, the Police Radio Room Supervisor will terminate the pursuit.

C. If a pursuit is initiated by a Special Unit and a Special Unit Supervisor is not available, Police Radio will assign the pursuit to a District Patrol Supervisor wherein the pursuit is happening.

D. If no justification for the pursuit is given by the initiating unit over Police Radio, it shall be the responsibility of all supervisors on the specific radio band, including the Police Radio Room Supervisor, to immediately terminate the pursuit. Also, any Supervisor is responsible for terminating a pursuit if they believe it has become too dangerous. The decision to terminate shall be final and not be subject to being countermanded.

E. A District Patrol Supervisor assigned to the area in which the pursuit is happening may, based upon his or her knowledge of the District, override any other outside supervisor monitoring and controlling the pursuit.

   **NOTE:** An "outside supervisor" is any supervisor not assigned to the district wherein the pursuit is happening.

F. During a pursuit, no more than two (2) marked radio patrol sedans will pursue a suspect vehicle (i.e. only the Primary and Secondary Units are permitted to engage in a pursuit and that no other vehicles will "caravan" behind the Secondary Unit).

G. Only sworn personnel may engage in a pursuit.

H. All other available sworn personnel (i.e. other than the Primary Unit, Secondary Unit, and Assigned Pursuit Supervisor) should be monitoring police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit in the areas of assignment. (e.g. Stopping cross traffic at a major intersection in the oncoming direction of a pursuit, etc.)

I. To lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle, the Primary Unit, and Secondary Unit. A minimum of five (5) car lengths should always be maintained during any pursuit. However, a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (i.e. how the vehicle is being operated, etc.), the Department's vehicle characteristics, officer's driving experience/capabilities, or any other circumstances that may exist.

J. All marked radio patrol sedans engaged in a pursuit must have, and will operate the police vehicle with emergency equipment activated continuously throughout the pursuit. This includes both light bars and red/blue lights and sirens.

   **NOTE:** Sworn personnel are reminded to use extreme caution when approaching any intersection during a pursuit and only proceed if clear of both vehicles and pedestrians.

K. During a pursuit, sworn personnel involved will not switch to another radio band should the pursuit enter another division or jurisdiction. If radio contact is lost for any reason, the pursuit shall be terminated.

L. Once the Secondary Unit arrives to assist, the main function of the Primary Unit is the apprehension of the fleeing suspect(s). The Secondary Unit's main functions are as communications for and backup to the Primary Unit.

M. Only the Primary Unit, Secondary Unit, and the Directing Supervisor may leave their assigned area in response to the pursuit unless ordered not to do so by a higher-ranking officer. No other units may leave their assigned area unless ordered to do so.

*3   N. In all inter-jurisdictional pursuits, the following actions will be taken by all Philadelphia Police personnel: (PLEAC 4.2.1)

   1. Sworn personnel in fresh and continuous pursuit may NOT pursue outside of the boundaries of Philadelphia unless permission is granted by a higher ranking supervisor.

   2. The initial pursuing officer will notify Police Radio when it is likely that a pursuit will continue into a neighboring jurisdiction. The exception is when the secondary unit arrives and takes over communications.

   3. Police Radio will notify the neighboring jurisdiction of the pursuit as soon as possible.

   4. When a pursuit is initiated by a law enforcement agency of another jurisdiction, Police Radio will notify the Patrol Supervisor who will immediately inquire into the circumstances surrounding the pursuit and what assistance is required by the pursuing agency,

   5. Sworn personnel will not engage in pursuits initiated by other law enforcement agencies unless in accordance with all provisions of this directive. In the districts wherein a pursuit has been initiated by another law enforcement agency, Police Radio will assign the relevant District Patrol Supervisor to monitor and control Philadelphia Police Department personnel.

   6. If an arrest is made outside of Philadelphia, but within the Commonwealth of Pennsylvania, the officer will transport the suspect(s) back to the Divisional Detective Headquarters. If an arrest occurs across any state line, the suspect(s) must go through the extradition procedures before being returned to Philadelphia.

O. Fleeing vehicles will not be stopped under any circumstances by the following techniques:

  1. Boxing-In – Surrounding the fleeing vehicles with police vehicles, which are then slowed to a stop with the fleeing vehicle.

  2. Ramming – The deliberate act of hitting a fleeing vehicle with a police vehicle for the purpose of forcing the fleeing vehicle off the road or into a fixed object.

  3. Roadblocks - The use of barricades, vehicles or other obstructions across a roadway to stop a fleeing vehicle.

*3
  4. Pursuit Termination Devices – The use of any pursuit termination or vehicle immobilization device (i.e, stop sticks, spike strips, etc.).  (PLEAC 4.22)

*3
P. Vehicles, other than a marked Radio Patrol Car (i.e., unmarked cars, EPW, SUV, Motorcycle, etc.) shall not, barring exigent circumstances, initiate a vehicle pursuit. However, if a pursuit is initiated based upon exigent circumstances, the operators of these types of vehicles shall relinquish the position as Primary Vehicle to the first responding marked RPC and withdraw from the pursuit immediately.

Q. Police vehicles being used to transport any non-sworn personnel, including but not limited to, prisoners, witnesses, recruits, police explorers, or any "ride-along" shall not engage in a pursuit. Additionally, any unit containing a canine shall not engage in a pursuit.

R. Sworn personnel will immediately terminate any pursuit if the suspect vehicle enters an interstate highway or divided roadway in the wrong direction.

S. Under no circumstances will any sworn personnel involved in a pursuit discharge a firearm at any fleeing vehicle or the occupants of a fleeing vehicle.

T. Barring extenuating circumstances, all sworn personnel involved in a pursuit in any manner will complete and submit the relevant portion of both Pursuit Memoranda (city and state) found in Appendix "A" of this directive within three (3) days.

---

**4  SPECIFIC RESPONSIBILITES**

A. Initiating/Primary Unit

  1. Determine the necessity of commencing or terminating a pursuit by considering:

    a. Whether justification to initiate the pursuit exists (refer to Section 1-B),
    b. Whether the suspect's identification and address are known, thereby making available an alternate means of arrest (e.g. via an arrest warrant),

    c.  The weather and road conditions,

    d.  Location and population density (vehicular and pedestrian),

    e.  The capabilities and characteristics of the department vehicle,

    f.  The officer's own driving capabilities,

    g.  The officer's familiarity with the pursuit area,

    h.  Any other extraordinary circumstances or conditions (e.g. the proximity to school zones, playgrounds, shopping centers, etc.) and

    i.  The speed and control of the suspect vehicle.

2. If a pursuit is initiated, immediately inform the radio dispatcher of:

    a.  The fact that a pursuit has been initiated, along with the justification,

    b.  The initial location, direction, and estimated distance to the suspect vehicle,

    c.  The approximate speed of both the suspect and police vehicles,

    d.  The vehicle description and, if possible, license information and a physical and clothing description of the occupants along with approximate ages,

    e.  The continuous progress of the pursuit and if headed towards another district, division, or jurisdiction,

    f.  Upon arrival of a Secondary Unit, relinquish communication responsibilities to the Secondary Unit.

3. Continuously evaluate the benefits of an immediate capture against the safety of the public, other officers and the suspect. An officer can self-terminate a pursuit at any time.

4. If ordered by a supervisor to relinquish the Primary Unit duties to another radio patrol sedan, immediately withdraw from the pursuit, return to area of assignment, and prepare to complete the relevant portion of the Pursuit Memoranda found in Appendix "A" of this directive.

5. Apprehend the suspect(s), or by ensuring that only the proper amount of force is used to make any arrests consistent with the guidelines in directive 10.2, "Use of Moderate/Limited Force". If the vehicle is stopped and the occupant(s) appear to barricade themselves inside the vehicle, ensure the provisions found in Directive 10.7, "Crisis Response/Critical Incident Negotiations," regarding barricaded persons are implemented.

6. If the Initiating/Primary Unit loses sight of the suspect vehicle, terminate the pursuit immediately and notify Police Radio. Begin a search of the area where suspect vehicle was last seen as directed by the responding supervisor.

7. If any supervisor terminates the pursuit, disengage from the pursuit immediately, safely stop and park the vehicle, notify police radio of location and odometer mileage, update patrol log, and await the arrival of a supervisor.

8. Upon the arrival of the Aviation Unit helicopter, the Initiating/Primary Unit's duty shall shift to the apprehension of the occupants coordinated with the helicopter flight crew. Thus, once the Aviation Unit has arrived and assumed the pursuit, the Initiating/Primary Unit shall immediately withdraw from the pursuit and:

   a. Return to a safer driving speed,
   b. Move out of sight of the fleeing vehicle,
   c. Continuously monitor Police radio as to the direction of the fleeing vehicle,
   d. Not renew pursuit of the fleeing vehicle if they should make subsequent visual contact and are in close proximity with it, and
   e. Be prepared for any reports by the flight crew that the fleeing vehicle has stopped and the suspect(s) have fled on foot.

9. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

B. Secondary Unit

1. Upon joining the Primary Unit, acknowledge to Police Radio as the "Secondary Unit".

2. Maintain visual contact with the primary unit and assume all communication responsibilities such as, reporting the continuous progress of the as indicated in Section 4-A-2, c through f of this directive.

3. If ordered by a supervisor, relinquish the Secondary Unit duties to another vehicle, immediately withdraw from the pursuit, and return to area of assignment.

4. Do not pass the Primary Unit unless requested to do so by that Unit or if other conditions exist, such as mechanical malfunction, etc.

5. Back-up and support the Primary Unit officer(s) consistent with Section 4-A-5 of this directive.

6. If either the primary unit or any supervisor/commander terminates the pursuit, immediately cease the pursuit.

7. Upon the arrival of the Aviation Unit helicopter, the secondary unit's duty shall be consistent with Section 4-A-8 of this directive.

8. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

C. Assigned Pursuit Supervisor shall:

1. Direct and control the pursuit and apprehension efforts by:

   a. Evaluating the Primary/Initiating Unit's justification for commencing and continuing the pursuit,

   b. Immediately terminating the pursuit, if necessary, considering all the facts and circumstances including, but not limited to, those factors identified in Section 4-A-1 of this directive,

   c. Ensuring the Aviation Unit was notified,

   d. Ensuring the Primary Unit and the Secondary Unit withdraw from the pursuit if Aviation Unit assumes the pursuit and that pursuit and that they comply with the provisions of Section 4-A-8 and 4-B-7 of this directive respectively.

   e. Monitoring all radio transmissions, and ensuring Police Radio is kept informed of location, direction, speed, weather and road conditions, vehicle and pedestrian traffic, etc.

   f. Limiting the involvement and radio use by other units.

   g. Coordinating other units to respond to strategic locations to possibly apprehend the suspects,

   h. Arriving at the scene of any apprehension as soon as possible to ensure the provisions of Directive 10.2, regarding the use of force and, if necessary, Directive 10.7 regarding barricaded persons are strictly observed.

2. If the pursuit was terminated by any supervisor, meet the Primary Unit and Secondary Units and inspect the vehicle odometers, sign officer's log noting location, odometer mileage, and mileage recorded by Police Radio.

3. After any pursuit, if appropriate, make sure officers have sufficient time to calm down and regain their composure before returning to patrol.

4. Supervisors must be proactive at the end of the pursuit to ensure that arrests are made in accordance with departmental policy. Supervisors will be held accountable if they fail to take appropriate action.

5. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

D. Police Radio Responsibilities

1. Police Radio Dispatcher

   a. When a Police Radio Dispatcher is notified that an officer is involved in a vehicular pursuit, the dispatcher will:

      1) Immediately notify a Radio Room Supervisor and 'J' band of the pursuit,

      2) Contact and assign the initiating officer's direct supervisor or an available district supervisor to the pursuit, who shall then direct and control the pursuit and any apprehension efforts,

      3) Notify the Police Aviation Unit if available,

      4) Monitor and broadcast the relevant information received from the Initiating/Primary Unit,

      5) Once a Secondary Unit has joined in the pursuit, use the Secondary Unit as the communications vehicle unless the Primary Unit is a two-officer vehicle,

      6) If the pursuit is terminated by any supervisor, request the location and odometer mileage from the terminated unit and dispatch a supervisor to that location,

      7) Assign a separate District Control Number for every pursuit.

2. Radio Room Supervisor Responsibilities

   a. Upon being notified by a Police Dispatcher of a pursuit, the Radio Room Supervisor:

      1) Will physically respond to the involved console and begin monitoring the pursuit ensuring all responsibilities of the Police Dispatcher in Section 4-D-1 are completed,

      2) If no justification for the pursuit is given by the initiating unit or if the initiating unit's supervisor or available district supervisor fails to respond to Police Radio, will immediately terminate the pursuit,

      NOTE: If a pursuit is terminated because the initiating unit's supervisor or available District Supervisor failed to respond, the appropriate supervisor's Commanding Officer, Divisional Inspector and the Regional Operations Command will be notified via a Blackberry message.

3) Ensure the notification of Aviation Unit and their availability.

4) When the pursuit results in an auto accident or injury to police or the suspect vehicle, the Pursuit Broadcast Tapes will be forwarded to the appropriate Commanding Officer.

5) Will generate a daily report of all pursuits, along with a printed copy of all radio transmissions of the pursuit, to the appropriate Commanding Officer for immediate action.

E. Aviation Unit Personnel

1. If the Aviation Unit takes over an **ACTIVE** pursuit, the Tactical Flight Officer (TFO) will:

   a. Advise Police Radio that they have assumed the pursuit **as the primary unit**.

   b. Ensure that the helicopter and other conditions are safe to continue the pursuit, such as available fuel and weather conditions, etc.,

   c. Broadcast the direction of the fleeing vehicle to allow officers on the ground to prepare to make an apprehension when the vehicle has stopped and the suspect(s) have fled on foot as per Section 4-A-8 and 4-B-7 of this directive.

2. If a **supervisor TERMINATES a pursuit** for any reason, Aviation Unit personnel will also terminate the pursuit.

3. In the event that the suspect vehicle is later discovered by the Aviation Unit, the Tactical Flight Officer (TFO) will make the proper notifications in an attempt to effect an arrest or to guard the suspect vehicle for prints.

F. District/Unit Commanders

1. Will continuously assess the decisions of the assigned supervisor and take control/action if necessary considering all the facts and circumstances including, but not limited to, the factors identified in Section 4-C-1-b of this directive.

2. Shall ensure that copies of the Pursuit Memoranda (city and state) found in Appendix "A" of this directive, the Pursuit Report generated by Police Radio and the radio transmissions are forwarded to the appropriate Deputy Commissioner and the Commanding Officer of the Police Academy, Accident Prevention Section within five (5) calendar days of the pursuit date.

3. The District/Unit Commanders should ensure a copy of the Pennsylvania Police Pursuit Report is forwarded to the Research and Analysis Unit, on the first business day after the pursuit. The original PSP Report will be submitted with the pursuit packet through the chain of command. This is further detailed in Appendix "A" page 6, of this directive.

4. Shall ensure the appropriate actions, up to and including formal disciplinary recommendations (75-18s), are taken against any subordinate who has violated any provision of this directive.

G. Appropriate Deputy Commissioner

1. Shall review the Pursuit Memoranda, the Pursuit Report generated by Police Radio and the radio transmissions to ensure that officers and supervisors comply with the procedures and policies set forth in this directive.

| RELATED PROCEDURES: | Directive 9.7, | Safe Operation of Police Vehicles |
|---|---|---|
| | Directive 10.2, | Use of Moderate/Limited Force |
| | Directive 10.7, | Crisis Response/Critical Incident Negotiations |
| | Disciplinary Code | |

## BY COMMAND OF THE POLICE COMMISSIONER

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 2450 | 01-14-09 | Clarification |
| *2 | 4193 | 01-16-09 | Deletion of 1-B-1-b-3 |
| *3 | 4830 | 08-18-15 | Additions/Changes |
| *4 | 1141 | 09-01-15 | Change |
| *5 | 1023 | 04-29-16 | Changes |
| *6 | 4131 | 06-16-16 | Addition |

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 04-29-16 |
|---|---|---|

**SUBJECT: POLICE VEHICLE PURSUIT MEMORANDUM**

This memorandum is to be completed regardless of whether or not the violator is apprehended, the length, or duration of the pursuit, or whether or not an accident had taken place.

A copy of the Complaint or Incident Report (75-48) will be included with this memorandum. When available and appropriate, a copy of Accident Report (AA-500 or 75-48C) will accompany it. It is very important that any vehicle accident involving a police vehicle, the fleeing vehicle, any other civilian or city-owned vehicle or any combination thereof ,be described not only in the AA-500 or 75-48C and the 75-48, but also in this Pursuit Memorandum and the Pennsylvania Police Pursuit Report.

*3/*4 This memorandum must be submitted through the chain of command for review to the Police
*5 Academy, Accident Prevention Section within thirty days. The Police Academy will retain copies of all State Police Pursuit Reports and AA-500 or 75-48Cs. The Commanding Officer of the initiating district/unit must ensure that the State Police Pursuit Report is sent to the Research and Analysis Unit.

MEMORANDUM

TO         : CHIEF INSPECTOR, TRAINING BUREAU
FROM    :
SUBJECT: PHILADELPHIA POLICE DEPARTMENT PURSUIT MEMORANDUM

DATE OR OCCURRENCE   TIME OF OCCURRENCE_____DAY_____

DISTRICT OF OCCURRENCE ____DIST. CONTROL NUMBER_____

LOCATION PURSUIT INITIATED_____

LOCATION PURSUIT TERMINATED_____

NUMBER OF POLICE UNITS INVOLVED_____

DURATION OF PURSUIT (MINUTES)____DISTANCE (CITY BLOCKS)_____

JUSTIFICATION FOR PURSUIT AND SPECIFIC VIOLATIONS_____

_____

VIOLATIONS DURING PURSUIT_____

TRAFFIC CONDITIONS (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

PEDESTRIAN TRAFFIC (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

WEATHER CONDITIONS (CIRCLE ONE):

1 - NO ADVERSE CONDITIONS
2 - RAINING
3 - SLEET, HAIL, FREEZING RAIN
4 - SNOWING
5 - FOG AND SMOKE
6 - RAIN AND FOG

ROAD CONDITIONS (CIRCLE ONE): DRY WET SNOW COVERED ICE COVERED

PRIMARY UNIT  NAME AND RANK OF OFFICER_____

BADGE #_____PAYROLL #---------------------------

DISTRICT OR UNIT/SQUAD AND GROUP___APPOINTMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE_____

SECONDARY UNIT: NAME AND RANK OF OFFICER_____

BADGE#_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____APPOINMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____ PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE

VIOLATOR'S VEHICLE: MAKE____MODEL_____YEAR_____

COLOR___TAG_____OPERATOR'S NAME_____
DATE OF BIRTH_____ADDRESS_____

CITY/STATE_____

VIOLATOR'S CHARGES_____

OWNER OF VEHICLE_____

PRIMARY OFFICER'S NARRATIVE: Outline the specifics of the pursuit, including justification. (Use 8" x 11" sheet of white paper should additional space be required.

_____

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SECONDARY OFFICER'S NARRATIVE: Outline the specifics of your involvement in the pursuit. (Use 8" x 11" sheet of paper should additional space be required.)

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SUPERVISOR MONITORING PURSUIT: NAME/RANK_____

DISPOSITION OF PURSUIT: PURSUIT TERMINATED  YES___  NO___

(IF YES BY WHOM) NAME/RANK_____

REASON FOR TERMINATION: EXPLAIN_____

_____

_____


ANY MOTOR VEHICLE ACCIDENTS AS A RESULT OF THIS PURSUIT? YES__ NO__

(THIS INCLUDES ALL POLICE VEHICLES, THE FLEEING VEHICLE, AND OTHER
CIVILIAN OR CITY-OWNED VEHICLES THAT MAY HAVE BECOME INVOLVED IN
AN ACCIDENT AS A DIRECT OR INDIRECT RESULT OF THE POLICE PURSUIT.)
(IF YES, EXPLAIN AND ATTACH COPY OF THE 75-48, AND WHEN AVAILABLE, AN
AA-500 OR 75-48C)

_____

_____


ANY POLICE OR CIVILIANS INJURED IN A VEHICULAR ACCIDENT AS A RESULT OF
THIS PURSUIT?  YES__ NO__  (IF YES, EXPLAIN AND GIVE EXTENT OF INJURIES.)
_____

_____


ANY POLICE OR CIVILIAN DEATHS AS A RESULT OF THIS PURSUIT?
YES__ NO _____

IF YES, EXPLAIN_____

_____

_____


ANY VIOLATIONS OF DIRECTIVE 41? YES___  NO___

(IF YES, EXPLAIN)_____

_____

SUPERVISOR'S NARRATIVE: PER DEPARTMENT POLICY, WAS THIS PURSUIT
JUSTIFIED?  YES___  NO___  EXPLAIN AND INCLUDE RECOMMENDATIONS

_____

_____

_____

_____

SUPERVISOR'S SIGNATURE_____BADGE #_____DATE_____

DISTRICT COMMANDING OR COMMAND INSPECTIONS BUREAU COMMENTS:
(Per Department policy, was this pursuit justified?) YES__ NO__

RECOMMENDATIONS_____

_____

_____

_____

COMMANDING OFFICER'S SIGNATURE_____ DATE_____

*5    INSPECTOR'S
      RECOMMENDATIONS_____

_____

_____

_____

INSPECTOR'S SIGNATURE_____ DATE_____

*5    CHIEF INSPECTOR'S
      RECOMMENDATIONS_____

_____

_____

CHIEF INSPECTOR'S SIGNATURE_____ DATE_____

*5   DEPUTY COMMISSIONER'S
     RECOMMENDATIONS_____

     _____

     _____

     _____

     DEPUTY COMMISSIONER'S SIGNATURE_____ DATE_____

     ACCIDENT PREVENTION SECTION:

     DATE RECEIVED_____BY WHOM_____

     RECOMMENDATIONS:_____

     _____

     _____

     TRAINING BUREAU CHIEF'S ACKNOWLEDGEMENT:
     (Per Department policy, was this pursuit justified?) YES___ NO___

                    _____
                    CHIEF INSPECTOR'S SIGNATURE

                    DATE_____

## PENNSYLVANIA POLICE PURSUIT REPORT

Act 154 of 1994 requires police departments in Pennsylvania to make a record of all vehicle pursuits and to report them to the Pennsylvania State Police. The Pennsylvania State Police is required to collect these reports, and to compile an annual summary of information to be reported to various entities. Completion and submission of this form for all pursuits, which occur on or after January 1, 1996, will ensure compliance with the reporting requirements of Act 154.

The detailed information collected through the use of this form will be used to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and to recognize training successes and deficiencies. It is intended that this will enable police departments throughout the Commonwealth to enhance the safety of their officers and the public they serve.

The form should be completed by either the primary pursuing police officer or their supervisor, at the discretion of the individual police department. It has been designed to be completed and read without the need for code sheets or overlays. The form may also be completed by agencies assisting the primary pursuing agency. Forms completed by assisting agencies shall not be submitted to the Pennsylvania State Police.

*3/*4 The Commanding Officer of the initiating district/unit shall ensure that original, completed forms are submitted directly to the Research and Analysis Unit as soon as possible. The Research and Analysis Unit shall submit it to the Pennsylvania State Police, upon receipt from the Commanding Officer of the initiating district/unit. Blank forms may be duplicated as necessary. Only original, completed forms shall be submitted to the Pennsylvania State Police. Copies should be made for your records.

Questions concerning the completion of this report should be directed to:

Pennsylvania State Police
Bureau of Research and Development
1800 Elmerton Avenue
Harrisburg, PA 17110
ATTN: Pursuit Reporting Coordinator
(717) 783-5536

## BLOCK INSTRUCTIONS

1. REPORTING AGENCY: Enter the name of the reporting agency. For agencies having stations at multiple locations, also list the location.

2. REPORTING OFFICER: Enter the full name of the individual preparing the report.

3. SIGNATURE: Self-explanatory.

4. INCIDENT NUMBER: Enter the Incident Number (or case number, etc.) your agency assigns the incident. If an additional vehicle(s) is actively pursued as part of the same incident, that pursuit shall be reported on a separate form, with a supplemental incident number, e.g., A01123456A.

   PSP: Enter the Incident Number as follows: A01123456, S13123456

5. PURSUIT DATE: Enter the date the pursuit began in the following format:

   010296 for January 2, 1996

6. PURSUIT TIME: Enter the time (24 hour clock) the pursuit began.

7. SUPERVISOR'S INITIALS AND BADGE NO.: Self-explanatory.

8. JURIS NUMBER: Enter the Juris Number assigned by the Pennsylvania State Police in the five boxes of the block. If your department has not been assigned a Juris Number, contact the Pennsylvania State Police, Bureau of Research and Development, Management Information and Uniform Crime Reporting Section, at (717) 783-5536.

   PSP: Use the appropriate Station Code, preceded by the number 9 (i.e., 91110 would be entered for Greensburg, Station Code 1110).

9. REASON INITIATED: Mark the choice which best describes the offense or suspected offense for which the officer INITIALLY decided to pursue the vehicle. If more than one choice applies, mark the most serious. Use only an offense known or suspected at the time the attempt to stop was initiated.

   EXAMPLE: If a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked. If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked.

   DUI OR SUSPECTED - The driver was known to be or suspected of Driving Under the Influence.

   OTHER TRAFFIC - Any other traffic violation.

   SUMMARY CRIMINAL - Any known or suspected summary criminal offense.

   MISDEMEANOR CRIMINAL - Any known or suspected misdemeanor criminal offens

   FELONY CRIMINAL - Any known or suspected felony criminal offense, except those relating to the vehicle known to be or suspected of being stolen.

   STOLEN OR SUSPECTED - The vehicle is known or suspected to be stolen.

10. TYPE VEHICLE PURSUED: Mark the choice, which best described the vehicle pursued.

   AUTOMOBILE - Passenger cars and mini-vans regardless of the manner in which they are registered.

   VAN/PICK-UP/SUV - Full size vans, all pick-up trucks, and sport utility vehicles, even though they may be registered as station wagons.

   MOTORCYCLE - All two-wheeled motorcycles, mopeds, motor-driven pedacycles.

   OTHER - All other vehicles.

11. APPREHENSION: Mark the choice which best describes the apprehension, if any, of the violator.

NONE - VIOLATOR SUCCESSFULLY ELUDED POLICE - Self-explanatory.

NONE - DECISION MADE TO TERMINATE - The pursuit was terminated due to a decision made by the pursuing officer(s) or a supervisor, even though officer(s) were able to continue the pursuit.

NONE - STOPPED, BUT ESCAPED ON FOOT - The pursuit resulted in the violator vehicle being stopped, but the violator escaped on foot.

APPREHENDED DURING PURSUIT - The violator was apprehended during pursuit. This includes during any foot pursuit or search conducted as an immediate continuation of the original pursuit.

DELAYED - AFTER TERMINATION OF PURSUIT - The violator is apprehended after the pursuit is terminated. This includes cases in which the violator is identified through investigation, or if the violator is identified during the pursuit, the decision is made to terminate the pursuit and apprehend the violator at a later time.

12. REASON TERMINATED - Mark the choice which best describes the reason for termination of the pursuit.

PURSUIT DISCONTINUED - Use if the pursuit was terminated by a decision to discontinue.

POLICE ACCIDENT - The pursuit was terminated because the pursuing police vehicle was involved in an accident.

POLICE VEHICLE DISABLED - The pursuit was terminated because the pursuing police vehicle suffered a mechanical failure other than that caused by an accident or collision.

VIOLATOR STOPPED VOLUNTARILY - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, and surrendered.

VIOLATOR ABANDONED VEHICLE - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, then fled on foot.

VIOLATOR STOPPED BY COLLISION OR ACCIDENT - The violator was involved in a collision or accident, which terminated the pursuit.

VIOLATOR VEHICLE DISABLED - The pursuit was terminated because the violator vehicle suffered a mechanical failure other than that caused by an accident or other police action.

STOPPED BY OTHER POLICE ACTION - The violator was stopped by apprehension techniques other than trailing pursuit, e.g., roadblock, induced stop, etc.

13. COLLISION TYPE: Mark the choices, which describe any collisions occurring during the pursuit.

NO COLLISION – Self-explanatory.

VIOLATOR ACCIDENT - If an accident occurs involving only the violator vehicle.

POLICE ACCIDENT - If an accident occurs involving only a pursuing police vehicle.

UNINVOLVED ACCIDENT - If an accident occurs involving only a vehicle or vehicles not involved in the pursuit, and the accident is a result of the actions of either the violator or police vehicles, e.g., the violator forces an uninvolved vehicle off the road.

VIOLATOR - POLICE ACCIDENT - If an accident occurs involving the violator and pursuing police vehicles.

VIOLATOR - UNINVOLVED ACCIDENT - If an accident occurs involving the violator vehicle and an occupied vehicle not involved in the pursuit.

UNINVOLVED - POLICE ACCIDENT - If an accident occurs involving an occupied vehicle not involved in the pursuit and a pursuing police vehicle.

VIOLATOR - POLICE DEL. INT. (Deliberate intent) - If the violator vehicle was deliberately driven into a police vehicle.

VIOLATOR - UNINVOLVED DEL. INT. - (Deliberate intent) - If the violator vehicle was deliberately driven into an uninvolved vehicle.

POLICE - VIOLATOR LEGAL INTER. (Legal Intervention) - If a police vehicle was deliberately driven into the violator vehicle as an act of legal intervention.

14. APPREHENSION TECHNIQUES:

USED: Mark each apprehension technique used during the pursuit.

END PURSUIT: Mark one technique most responsible for ending the pursuit, if the violator vehicle was stopped.

TRAILING PURSUIT - Following the violator vehicle in an attempt to stop it.

ROAD SPIKES - Road Fangs, Spike Strips, Stop Sticks, or other devices designed to deflate the tires of a pursued vehicle.

PARTIAL ROADBLOCK - A roadblock intended to stop or slow the pursued vehicle while allowing the vehicle to pass through or around the roadblock.

TOTAL ROADBLOCK - A roadblock, which completely blocks the pursued vehicle's path, preventing the vehicle from passing through or around the roadblock without striking the roadblock.

ROLLING ROADBLOCK - One or more police vehicles being driven in front of, and in the same direction as, the pursued vehicle. The police vehicles are then slowed to force the violator vehicle to stop.

OTHER INDUCED STOP - One or more police vehicles being used to force the pursued vehicle to stop. For the purposes of this report, in an induced stop, there is no attempt to make contact with the pursued vehicle.

LEGAL INTERVENTION - For the purposes of this report, deliberately driving a police vehicle into the violator vehicle in an attempt to stop the vehicle.

FIREARMS - Firearms or long guns discharged at the pursued vehicle or driver.

AIR SUPPORT - Assistance is provided by any type of aircraft.

15. NONPURSUIT RELATED CHARGES: List the charges filed against the operator and occupants of the pursued vehicle, which are not a result of their conduct during the pursuit, if they are apprehended during the pursuit. This includes charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9. If there are more than four, list the four most serious charges here. Charges filed in another state should be entered as if they were filed in Pennsylvania. Check the appropriate space if there are additional non-pursuit-related charges and list them in the continuation/synopsis.

   EXAMPLE:    A violator is the subject of an outstanding warrant for burglary and criminal trespass. During the pursuit, the violator attempts to ram a pursuing police vehicle. The violator is apprehended during the pursuit, and a search of the vehicle, incident to the violator's arrest, reveals illegal drugs. CC3502 and CC3503 would be entered in this block (CC2702, aggravated assault, would be entered under Pursuit Related Charges, and the drug violations would be listed under Other Pursuit Related Charges.)

In the first two blocks, enter one of the following codes:

CC - Crimes Code
CS - Controlled Substance, Drug, Device and Cosmetic Act
FW - Fireworks Law
GM - Game Law
LL - Liquor Law
VC - Vehicle Code

In the next four blocks, enter the section number. For violations of the Controlled Substance, Drug, Device, and Cosmetic Act, delete the (a). Section 13(a)30 would be coded as 1330.

16. ROAD SURFACE: Mark the choice which best described the condition of the road surface during the pursuit.

17. VISIBILITY: Mark the choice which best described the visibility conditions during the pursuit.

DAY/CLR - Daylight, with no atmospheric obscurement, such as fog, rain, snow, etc.

DAY/OBSC - Daylight, with atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/CLR - Dusk or dawn, with no atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/OBSC - Dusk or dawn, with atmospheric obscurement, such as fog, rain, snow, etc.

DARK/CLR - Dark, with no atmospheric obscurement, such as fog, rain, snow, etc.

DARK/OBSC - Dark with atmospheric obscurement, such as fog, rain, snow, etc.

18. MISC:

PRIMARY PURSUING AGENCY - Mark this if your agency was the primary pursuing agency during the pursuit.

ASSISTING AGENCY - Mark this if your agency was assisting the primary pursuing agency. Only the primary pursuing agency is required to forward this report to the Pennsylvania State Police.

PSP - This report shall be forwarded in accordance with applicable directives regardless of the status of the Pennsylvania State Police as either the primary pursuing agency or an assisting agency.

PROBABLE USE DRUGS/ALCOHOL - Mark this if it is suspected that the violator is suspected of being under the influence of drugs or alcohol, regardless of whether charges relating to the use of drugs or alcohol are filed.

PURSUED VEH. OPPOSE TRAFFIC - Mark if the pursued vehicle was driven on a one-way roadway against the normal flow of traffic.

POLICE VEH. OPPOSE TRAFFIC - Mark if any police vehicle actively pursuing the violator was driven on a one-way roadway against the normal flow of traffic.

NOTE: If a police vehicle were driven on a one-way roadway against the normal flow of traffic while not actively pursuing the violator, such as to take a position at a roadblock, this block would not be completed.

19. PURSUIT-RELATED CHARGES:  Mark all the charges resulting from the violator's operation of the pursued vehicle during the pursuit.

20. OTHER PURSUIT RELATED CHARGES:  Enter any other charges resulting from the violator's operation of the pursued vehicle during the pursuit.

21. HIGHWAY:  Mark the type of highway(s) on which the pursuit started, traveled on during the pursuit, and on which the pursuit ended.

22. AREA: Mark the type of area(s) in which the pursuit started, traveled through, and ended.

| | |
|---|---|
| URBAN/BUS | -Urban area or business district |
| SUBURBAN | -Self-explanatory |
| RESIDENTIAL | -Self-explanatory |
| RURAL | -Self-explanatory |

BLOCKS 23 THROUGH 37 - Enter three digits, e.g., enter three as 003, ten as 010, etc.

23. MARKED VEHICLES DIRECTLY INVOLVED:  Enter the number of marked police vehicles directly involved in the pursuit.  Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

24. UNMARKED VEHICLES DIRECTLY INVOLVED:  Enter the number of unmarked police vehicles directly involved in the pursuit.  Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

25. VIOLATOR INJURIES:  Enter the number of persons in the violator vehicle who received injuries resulting from vehicular operation during the pursuit.

26. POLICE INJURIES:  Enter the number of persons in police vehicles who received injuries resulting from vehicular operation during the pursuit.

27. UNINVOLVED INJURIES:  Enter the number of uninvolved persons who received injuries resulting from vehicular operation during the pursuit.

28. VIOLATOR DEATHS:  Enter the number of persons in the violator vehicle who were killed as a result of vehicular operation during the pursuit.

29. POLICE DEATHS:  Enter the number of persons in police vehicles who were killed as a result of vehicular operation during the pursuit.

30. UNINVOLVED DEATHS:  Enter the number of uninvolved persons who were killed as a result of vehicular operation during the pursuit.

31. VIOLATOR PROPERTY DAMAGE:  Enter the estimated amount of property damage to the violator's vehicle resulting from the pursuit.

32. POLICE PROPERTY DAMAGE:  Enter the estimated amount of property damage to police vehicles resulting from the pursuit.

33. UNINVOLVED PROPERTY DAMAGE:  Enter the estimated amount of property damage to uninvolved property resulting from vehicular operation during the pursuit.

34. NUMBER OF PERSONS IN PURSUED VEHICLE: Self-explanatory.

35. PERSONS IN PURSUED VEHICLE ARRESTED: Self-explanatory.

36. LENGTH OF PURSUIT (MILES): Self-explanatory.

37. TIME ELAPSED DURING PURSUIT (MINUTES): Self-explanatory.

38. VEHICLE: Enter the pertinent information concerning the pursued vehicle.

39. VIOLATOR: Enter the pertinent information concerning the pursued subject.

40. CONTINUATION/SYNOPSIS: Self-explanatory.


PENNSYLVANIA POLICE PURSUIT REPORTING SYSTEM
COMMON REPORTING ERRORS

Block 8  (JURIS NUMBER)
This block must be completed.  If you don't know this number, you can obtain it from the person in your department who submits Uniform Crime Report information to the Pennsylvania State Police, or call the number listed below.

Block 9 (REASON INITIATED)
Mark ONLY ONE selection. If two or more selections could be made, mark only the most serious. For example, if a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked. If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked. Selection should usually agree with non-pursuit-related charges in block 15.

Blocks 10(TYPE VEHICLE PURSUED), 11 (APPREHENSION), 12 (REASON TERMINATED)
        Mark only one selection in each block.

Block 13 (COLLISION TYPE)
        More than one selection may be marked.

Blocks 11(APPREHENSION), 39 (VIOLATOR)
If a violator is identified in Block 39, some type of apprehension should be indicated in Block 11.

Block 14 (APPREHENSION TECHNIQUES)
There may be more than one selection made under USED. No more than one selection may be made under END PURSUIT.

One selection under END PURSUIT must be marked, unless NONE-VIOLATOR SUCCESSFULLY ELUDED POLICE or NONE-DECISION MADE TO TERMINATE or DELAYED - AFTER TERMINATION OF PURSUIT are marked in block 11 (APPREHENSION).

Also, OTHER INDUCED STOP refers to one or more police vehicles being used to force the pursued vehicle to stop. It does not include TOTAL ROADBLOCK, ROLLING ROADBLOCK, and LEGAL INTERVENTION (in legal intervention, a police vehicle is deliberately driven into the pursued vehicle.

Block 15 (NONPURSUIT-RELATED CHARGES), 20 (PURSUIT-RELATED CHARGES)
        Listing charges:

        RIGHT    WRONG
        VC 1543   75 1543

Blocks 15, 19, 20 (NONPURSUIT AND PURSUIT-RELATED CHARGES)
If suspect was not apprehended, no charges should be indicated in Blocks 15, 19, or 20.

Include charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9.

For example, a violator is the subject of an outstanding warrant for burglary and criminal trespass. During the pursuit, the violator attempts to ram a pursuing police vehicle. The violator is apprehended during the pursuit, cocaine is found in his vehicle. CC3502 (burglary), CC3503 (criminal trespass, and CS1316 (possession of a controlled substance) would be entered in Block 15 (NONPURSUIT-RELATED CHARGES), CC2702 (aggravated assault) would be entered in Block 19 (PURSUIT-RELATED CHARGES). (The example in the original instructions indicated the drug charges would be considered pursuit-related. This was incorrect.)

NEW FOR 1997 Also include charges exceptionally cleared. For example, if a suspect is killed in the course of the pursuit or other police action related to the pursuit, but otherwise would have been charged with fleeing and eluding, recklessly endangering another person, and aggravated assault, then these charges should be listed in the appropriate blocks.

Block 19, 20 (PURSUIT-RELATED CHARGES)
Charges listed in Block 15 may be listed here also, but only if they are the result of a different incident. For example, aggravated assault is listed in Block 15 because of an outstanding warrant, then the suspect, during the pursuit, rams a pursuing vehicle, resulting in another aggravated assault charge, which would then be listed in Block 20

Blocks 23 through 37
 Enter only whole numbers, in three-digit format

  001  RIGHT
  1.0   WRONG

Blocks 31 through 33 (PROPERTY DAMAGE)
 These amounts must be reported in multiples of $100.

  For example:  005  $500.00
         050  $5,000.00
         500  $50,000.00

---

## BY COMMAND OF THE POLICE COMMISSIONER

---